**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KRISTINA T.,**

                            **Plaintiff,**

  vs.                                                 1:19-CV-135
                                                                (MAD)

**COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,**

                            **Defendant.**
_____

**APPEARANCES:**                                     **OF COUNSEL:**

**DENNIS KENNY LAW**                    **JOSEPHINE GOTTESMAN, ESQ.**
288 North Plank Road
Newburgh, New York 12550
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **DANIELLA M. CALENZO, ESQ.**
**OFFICE OF REGIONAL GENERAL**        **AMELIA STEWART, ESQ.**
**COUNSEL REGION II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    Plaintiff, Kristina T. ("Plaintiff"), commenced this action on February 2, 2019, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision by the Commissioner of Social Security denying Plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI"). *See* Dkt. No. 1. On July 15, 2009, Plaintiff filed an application for disability insurance benefits, alleging an onset of disability of August 16, 2006. *See* Administrative Transcript ("Tr.") at 127; *see also* Dkt. No. 1 at ¶ 6. On July 16, 2009,

Plaintiff filed an application for SSI. *See id.* at 129. On May 13, 2011, following a video hearing, Administrative Law Judge ("ALJ") Robert Gonzalez issued a decision denying Plaintiff's applications. *See id.* at 17. On December 9, 2011, the Appeals Council denied a request for review. *See id.* at 5. Plaintiff commenced an action in this Court on February 22, 2012, seeking review of the ALJ's decision. *See Teneyck v. Colvin*, No. 1:12-CV-308, Dkt. No. 1 (N.D.N.Y.). Subsequently, Plaintiff filed a motion to remand the action under sentence six of 42 U.S.C. § 405(g), in light of "new and material evidence." *See id*. at Dkt. No. 19. The Court granted Plaintiff's motion and the action was remanded. *See id*. at Dkt. No. 25.

A second administrative hearing took place before ALJ Gonzalez on December 15, 2017. *See* Tr. at 654. On March 30, 2018, the ALJ issued a decision denying Plaintiff's application. *See id*. at 630. Plaintiff subsequently requested review by the Appeals Council, which was denied. *See id*. at 618. The instant action was filed on February 2, 2019, and seeks review of the ALJ's March 30, 2018 decision denying Plaintiff's application. *See* Dkt. No. 1. Presently before the Court is Plaintiff's motion for judgment on the pleadings. *See* Dkt. No. 22. For the following reasons, Plaintiff's motion is denied.

## II. BACKGROUND

On the initial application date of July 16, 2009, Plaintiff was thirty-five years old. *See* Tr. at 129. Plaintiff reported a high school degree. *See* Tr. at 659. Prior to the alleged onset date, Plaintiff worked at a variety of jobs that included work as an administrative assistant, assembly person, assistant manager in retail, bartender, cashier, customer service representative, front end clerk, and jewelry salesperson. *See id*. at 156. Plaintiff is seeking benefits for a closed period of time from August 16, 2006 to June 24, 2011. *See id*. at 658.

The record indicates that Plaintiff suffers from ongoing pain associated with fibromyalgia, chronic fatigue syndrome, myofacial pain, right knee osteoarthritis and chondromalacia patella. *See id*. at 240-43, 258, 481, 601. Plaintiff has been diagnosed with bilateral patella femoral syndrome, lumbar spine degenerative disc disease, disc herniations and spondylosis, trochanteric bursitis, and carpal tunnel syndrome. *See id*. Plaintiff also suffers from anxiety, depression, obsessive-compulsive disorder, and trichotillomania. *See id*. at 611-12.

Beginning in 2008, Plaintiff began treatment for chronic lower back pain. *See id*. at 246-47. A May 2008 MRI revealed a bulging L3-4 disc, right posterior herniation of the L4-5 disc with signal loss, posterior extrusion, right side of dural sac and right L5 nerve root compression, and mild degenerative changes in the facet joints. *See id*. at 240-41. Throughout the year, Plaintiff sought treatment for worsening lower back pain, reporting exacerbation of symptoms with lifting, bending, lying down, and standing. *See id*. at 273. Plaintiff reported that regular physical therapy improved her symptoms slightly. *See id*. In May 2008, Plaintiff was diagnosed with a variety of issues regarding her right knee. *See id*. at 243. During that visit, Plaintiff reported a history of knee surgeries dating back to 1999. *See id*. An examination resulted in an impression that Plaintiff suffered from bilateral patellofermoral syndrome with right knee patellofemoral osteoarthristis and a possible right knee medial meniscus tear. *See id*. at 244. Plaintiff was referred for physical therapy and Plaintiff began Synvisc injections soon thereafter. *See id*. at 244, 354. In June, Plaintiff was diagnosed with right lumbar facet dysfunction and right greater trochanteric bursitis. *See id*. at 274. At this visit, Plaintiff received her first bursa injection, however, Plaintiff continued to experience hip pain through October of 2008. *See id*. at 274, 372. In July, Plaintiff underwent her first nerve block at the L3-4, L4-5, L5-S1, and S1

nerves. *See id.* at 271. Following the nerve block, Plaintiff reported a fifty percent improvement in her symptoms, but re-injured her back lifting her son. *See id.* at 269.

In January 2009, Plaintiff underwent a psychological assessment which resulted in a diagnosis for depression. *See id.* at 600. In February, an MRI revealed a right-sided disc protrusion at the L4-5 level. *See id.* at 258. In March, Plaintiff was diagnosed with fibromyalgia and she continued to receive treatment for her symptoms throughout the year. *See id.* at 478, 481. Repeatedly throughout the year, Plaintiff complained of chronic lower back pain and was treated for related symptoms. *See id.* at 263-81. Plaintiff continued to receive Synvisc injections in her right knee. *See id.* at 277. In December, Plaintiff reported an improvement in panic and anxiety symptoms. *See id.* at 461.

In February 2010, Plaintiff underwent an examination to determine her physical residual functional capacity ("RFC") for her initial benefits application. *See id.* at 423. At that examination, Plaintiff claimed to suffer from back pain, right knee pain, hip pain, and constant fatigue. *See id.* at 427. In March, an MRI of Plaintiff's knee revealed that joint effusion and subarticular edema were more extensive than when Plaintiff was initially seen in 2008. *See id.* at 604. Plaintiff began to experience more stable psychological symptoms following medication changes. *See id.* at 460. Following a knee surgery in September 2010, Plaintiff sought treatment for lower back pain. *See id.* at 611. Subsequently, an MRI revealed small disc herniations at the L4-5 and L5-S1 levels. *See id.* at 601. In October, Plaintiff received a caudal epidural steroid injection to treat her low back pain. *See id.* at 617. In February 2011, Plaintiff complained of worsening lower back pain and exhibited allodynia. *See id.* at 480. Finally, in March 2011, Plaintiff presented for treatment related to her low back pain and complained that her symptoms were exacerbated by prolonged sitting. *See id.* at 605.

# III. DISCUSSION

**A.  Standard of Review**

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citation omitted). "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as

5

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

## B.     The ALJ's Decision

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August, 16, 2006, the alleged onset date. *See* Tr. at 635. At step two, the ALJ concluded that Plaintiff had the following severe impairments: fibromyalgia, chronic fatigue syndrome, myofacial pain, right knee osteoarthritis and chondromalacia patella, bilateral patella femoral syndrome, lumbar spine degenerative disc disease, disc herniations and spondylosis, trochanteric bursitis, carpal tunnel syndrom, depression, anxiety, obsessive compulsive disorder, and trichotillomania. *Id*. at 636. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. The ALJ then found that Plaintiff

> has the residual functional capacity to perform light work as defined
> in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can

> occasionally stoop, crouch, crawl, kneel, and climb ramps and
> stairs, and frequently handle and finger bilaterally. The claimant
> can understand, remember and carry out simple work and adapt to
> routine work place changes.

*Id*. at 638. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id*. at 645. At the fifth and final step of the analysis, the ALJ solicited the testimony of a vocational expert. *See id*. at 646. The vocational expert testified that a hypothetical individual of Plaintiff's age, with her education, past relevant work experience, and RFC (as described above) could perform the representative occupations of charge-account clerk, food beverage clerk, callout operator, and tube operator. *See id*. The ALJ relied on this testimony to determine that Plaintiff was not disabled as defined by the Social Security Act. *See id*. at 646.

**C.  Analysis**

*1. Weighing the Opinion Evidence*

Plaintiff objects to the manner in which the ALJ weighed the available medical opinions. *See* Dkt. No. 22 at 27-32. Specifically, Plaintiff alleges that the ALJ erroneously assigned greater weight to the opinions of state agency consultants than the opinions of treating sources. *See id*. at 26. The opinions at issue are those of Dr. Alex Gindes ("Dr. Gindes"), licensed clinical social worker Linda Lauretta ("LCSW Lauretta"), advanced nurse practitioner Katherine Mahar ("ANP Mahar"), and Dr. Amelita Balagtas ("Dr. Balagtas"). *See id*. at 27-31.

The treating physician rule states that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). Medical opinions given by providers who are not acceptable medical sources are not subject to the treating physician rule.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Asrtue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a)). Licensed clinical social workers and nurse practitioners are not "acceptable medical sources." Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006).

When an ALJ is considering how best to weigh the opinion of a non-acceptable medical source and other non-treating medical opinions, the ALJ must consider a number of factors, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* SSR 06-03P, 2006 WL 2329939, at *4; *see also* 20 C.F.R. § 404.1527(c). After accounting for these factors, the ALJ should generally explain the weight given to opinions from non-acceptable medical sources or at least "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *See* SSR 06-03P, 2006 WL 2329939, at *6.

### *a. Dr. Gindes*

In evaluating the opinion of Dr. Gindes, the ALJ assigned "great weight" to the portion of Dr. Gindes' opinion finding that Plaintiff was able to follow and understand simple instructions, perform simple tasks independently, but was not able to perform complex tasks. *See* Tr. at 642. However, the ALJ assigned "very little weight" to the remainder of Dr. Gindes' opinion, finding

8

that Dr. Gindes failed to provide sufficient support for the opinion and that the opinion was inconsistent with the medical record. *See id*.

Plaintiff alleges that the ALJ committed reversible error by crediting certain portions of Dr. Gindes' opinion while rejecting others. *See* Dkt. No. 22 at 22. "[A]n ALJ may properly 'credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.'" *Walker v. Colvin*, No. 3:15-CV-465, 2016 WL 4768806, *10 (N.D.N.Y. Sept. 13, 2016) (quotations omitted).

Initially, the Court notes that, as a consultative examiner, Dr. Gindes' opinion is not entitled to increased weight or deference under the treating physician's rule. Rather, Dr. Gindes' opinion is subject to the same evaluation as all medical opinions from non-treating sources. *See id*. at 919; *see also* 20 C.F.R. § 404.1527 (c). Thus, the ALJ is entitled to accept or reject those portions of Dr. Gindes' opinion based on the consistency of the opinion with the medical record.

In opining that Plaintiff is able to follow instructions and perform simple tasks independently, Dr. Gindes noted that Plaintiff drove twenty-three miles to the exam, appeared well-groomed and appropriately dressed, was cooperative, had adequate social skills, and exhibited appropriate speech and thought content. *See id*. at 917-918. The ALJ assigned great weight to this portion of the opinion, finding it to be supported by treatment records and other medical opinions. *See id*. at 641-42. Dr. Gindes also found that claimant was not likely to maintain attention and concentration, relate to others, or deal with stress. *See id*. at 919. The ALJ, in assigning this portion of the opinion "very little weight," noted that the opinion was inconsistent with other record evidence. *See id*. at 408, 599, 642. Specifically, the ALJ noted that Plaintiff was often cooperative and able to appropriately interact with other treating providers and evaluators. *See id*. at 936.

Upon review of the ALJ's decision, it is clear that the ALJ appropriately considered the level of support for Dr. Gindes' opinion, the consultative nature of the examination, and the consistency of that opinion with the record as a whole. *See id*. at 641-42; 20 C.F.R. §§ 404.1527(c)(3)-(4). Further, the ALJ detailed his reasons for crediting portions of the opinion while rejecting others. *See* Tr. at 641-42. Accordingly, the Court finds that the ALJ properly considered the weight of the medical opinions in relation to the record evidence and sufficiently explained the basis for his conclusions as to Dr. Gindes' opinion.

### *b. LCSW Lauretta*

Plaintiff argues that LCSW Lauretta's opinion, one of Plaintiff's longtime treating providers, was improperly dismissed by the ALJ. *See* Dkt. No. 22 at 30. LCSW Lauretta opined that Plaintiff was unable to manage stress; loses focus; was unable to concentrate or multi-task; had loss of functioning due to physical impairments; was unable to shop, walk, or sit; had persistent anxiety and depressive symptoms that were resistant to treatment; and had limitations in her ability to perform mental and behavioral activities of work due to lack of concentration and anxiety. *See* Tr. at 468-71. The ALJ accorded LCSW Lauretta's opinion "very little weight," finding her opinion to be poorly supported by medical evidence provided by treating providers and assessments conducted by state agency medical experts. *See* Tr. at 643.

Initially, the Court finds that the ALJ correctly noted that LCSW Lauretta, as a licensed clinical social worker, is not an "acceptable medical source." *See* Tr. at 643; SSR 06-03P, 2006 WL 2329939, at *2. Thus, her opinion is not entitled to additional weight under the treating physician rule. *See id*.; *see also* 20 C.F.R. § 404.1527(c)(2).

In reaching his decision, the ALJ examined the evidence underlying LCSW Lauretta's opinion and found that her opinion was inconsistent with other record evidence. *See* Tr. at 643.

Specifically with regard to LCSW Lauretta's opinion on the impact of Plaintiff's anxiety and depression on her ability to work, the ALJ found that record evidence indicated that Plaintiff's psychological symptoms showed improvement and were responsive to treatment. *See id*. at 460-61. Further, in explaining his conclusions, the ALJ considered the length and nature of the treatment relationship, the evidence offered in support of the opinion, and the consistency of the opinion with the record as a whole. *See id*. at 643-44; SSR 06-03P, 2006 WL 2329939, at *4; 20 C.F.R. § 404.1527(f). Accordingly, the Court finds that the ALJ properly considered the weight given to LCSW Lauretta's opinion and sufficiently explained his reasoning in assigning little weight to the opinion.

### *c. ANP Mahar*

Plaintiff argues that the ALJ erroneously assigned little weight to the opinion of one of Plaintiff's longtime treating providers, ANP Mahar. *See* Dkt. No. 22 at 28-29. ANP Mahar opined that Plaintiff would be unable to sit for more than ten consecutive minutes, stand for more than ten minutes, and walk for more than one hour. *See* Tr. at 591. ANP Mahar further opined that Plaintiff could not stoop, kneel, crouch, or crawl. *See id*. at 593. The ALJ assigned "very little weight" to ANP Mahar's opinion, finding that the opinion was inconsistent with other record evidence. *See* Tr. at 644-45.

Again, the Court finds that the ALJ correctly noted that ANP Mahar, as a nurse practitioner, is not an "acceptable medical source." *See* Tr. at 643; SSR 06-03P, 2006 WL 2329939 at *2. Thus, her opinion is not entitled to additional weight under the treating physician rule. *See id*. at 2; *see also* 20 C.F.R. § 404.1527(c)(2).

As noted, in weighing ANP Mahar's opinion, the ALJ found that it was inconsistent with the other record evidence. *See* Tr. at 644. Specifically, the ALJ found that ANP Mahar's opinion

11

as to limitations of Plaintiff's physical abilities was belied by records of numerous examinations in which Plaintiff was described as feeling well with no distress or new complaints. *See id*. at 485-588, 644. Further, the ALJ found that ANP Mahar's opinion as to Plaintiff's ability to stoop, kneel, crouch, and crawl were inconsistent with the record evidence and Plaintiff's reported ability to engage in daily living tasks including taking care of her young son, shopping, driving, cleaning, and managing self-care. *See id*. at 644-45. In reaching his conclusion, the ALJ considered the nature of the examination and treatment relationship, the evidence offered in support of the opinion, and the consistency of the opinion with the record evidence. *See id*. at 644-45. Accordingly, the Court finds that the ALJ properly weighed and explained his rationale for his conclusion regarding ANP Mahar's opinion.

### *d. Dr. Balagtas*

Plaintiff summarily states that the ALJ erroneously accorded little weight to Dr. Balagtas' opinion that Plaintiff had moderate limitations for prolonged sitting. *See* Dkt. No. 22 at 27. The ALJ assigned "some weight" to the overall opinion of Dr. Balagtas, but assigned "little weight" to the finding that Plaintiff had moderate limitations with prolonged sitting. *See* Tr. at 644. Specifically, the ALJ found this portion of Dr. Balagtas' opinion to be unsupported and inconsistent with Plaintiff's reports of daily activity. *See id*.

There is no requirement that the ALJ accept the opinion of a consultative examiner regarding a plaintiff's limitations. *See Pellam v. Astrue*, 508 Fed. Appx. 87, 89-90 (2d Cir. 2013). Rather, the ALJ may credit those portions of the opinion which are supported by substantial evidence and reject portions which contradict the record evidence. *See Walker*, 2016 WL 4768806 at *10 (citations omitted).

Here, the ALJ rejected Dr. Balagtas' opinion that Plaintiff had limitations in prolonged sitting, finding the opinion inconsistent with Plaintiff's description of her daily activities. *See* Tr. at 644. The record indicates that Plaintiff is able to drive for significant periods of time, manage her own self-care, and spends her days watching television and taking care of her young son. *See id*. at 405-07. This evidence supports the ALJ's finding that Plaintiff is not limited in prolonged sitting. Further, in reaching his conclusion, the ALJ considered the nature and length of the examining relationship, the evidence offered in support of the opinion, and the consistency of the opinion with the record evidence. *See id*. at 644. Accordingly, the Court finds that the ALJ properly weighed each medical opinion in relation to the record evidence and provided appropriate explanations for his conclusions.

### *2. Combined Impact of Plaintiff's Impairments*

Plaintiff summarily alleges that the ALJ failed to consider the combined effect of her impairments, leading to an erroneous decision that Plaintiff is not impaired. *See* Dkt. No. 22 at 26. This argument is without merit. The ALJ explicitly noted that the combined effect of Plaintiff's impairments was taken into account when considering the question of impairment. *See* Tr. at 636-37. Thus, the Court finds that the ALJ properly considered the combined effect of Plaintiff's mental and physical impairments when determining whether Plaintiff met the impairment threshold for purposes of the Social Security Act.

### *3. Plaintiff's Impairments*

Plaintiff also briefly argues that the ALJ erred at step three of the sequential evaluation. Plaintiff contends that her back problems meet the criteria of Listing 1.04 (disorders of the spine), and that this demonstrates that she was unable to engage in substantial gainful activity. *See* Dkt. No. 22 at 32. Plaintiff argues that a finding that her nerve root was compressed and evidence that

she repeatedly received nerve blocks in her lumbar spine indicates that she met or medically equaled the criteria of Listing 1.04. *See id.* The Court finds this argument unpersuasive.

The Listing of Impairments, set forth in Appendix 1 of 20 C.F.R. Part 404, Subpart P, describes impairments for each of the major body systems that are considered severe enough to prevent an individual from performing any gainful activity, regardless of his or her age, education or work experience. Disorders of the spine, including spinal stenosis or degenerative disc disease, are sufficient to satisfy this Listing when accompanied by

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the low back, positive straight-leg rasing test (sitting and supine); or
>
> B. Spinal arachnoiditis . . . manifested by severe burning or painful dysethesia, resulting in the need for changes in position or posture more than once every [two] hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication . . . , manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

*See* Appendix 1 to 20 C.F.R. Part 404, Subpt. P, § 1.04. For a claimant to show that her impairment meets a Listing, the claimant must meet all of the specified medical criteria of that Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). An impairment that manifests some but not all of the Listing's criteria does not qualify. *See id.*

In the present matter, the ALJ considered the criteria of Listing 1.04, but found that Plaintiff's impairments do not meet the criteria of this Listing. *See* Tr. at 636. Specifically, the ALJ found that

> the record does not demonstrate compromise of a nerve root . . . or the spinal cord with additional findings of: A) evidence of nerve root compression characterized by neuro-anatomic distribution of

14

> pain, limitation of motion of the spine, motor loss . . . accompanied
> by sensory or reflex loss . . . or B) spinal arachnoiditis; or C)
> lumbar spinal stenosis resulting in pseudoclaudication.

*Id*. at 636-37. Moreover, the ALJ noted that the record showed a lack of reduced joint motion, muscle spasms, sensory deficit, and motor disruption that may have resulted from or been associated with Plaintiff's symptoms. *See id*. at 641.

While the record contains evidence that Plaintiff's nerve root was compressed, Plaintiff has failed to establish any of the other required criteria of Listing 1.04. *See id*. at 240; *see also* Appendix 1 of 20 C.F.R. Part 404, Subpart P. Moreover, the record indicates that Plaintiff exhibited good range of motion in all joints, normal strength, and negative straight leg raise testing. *See id*. at 481. The record evidence shows that when Plaintiff reported low back pain, she denied any radicular symptoms and denied numbness, tingling, or weakness in her legs. *See id*. at 261, 276, 347, 611.

The ALJ noted, and the record supports, that Plaintiff suffered from low back pain. *See id*. at 636. However, the ALJ's conclusion that Plaintiff's degenerative disc disease does not meet the criteria for Listing 1.04 is supported by substantial evidence.

### *4. Residual Functional Capacity*

Having decided that the ALJ's analysis of the medical opinion evidence was proper, the Court will examine whether the RFC determination is supported by substantial evidence.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC determination is informed by consideration of a claimant's physical and mental abilities, symptomology, including pain, and other limitations that could interfere with work activities on a

regular and continuing basis. *See id.*; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

When addressing a plaintiff's RFC, an ALJ is required to note how "the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and non-medical evidence (*e.g.*, daily activities, observations)." SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Additionally,

> [t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545, 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96–8p, 1996 WL 374184, at *1; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 490 (W.D.N.Y. 2004). An ALJ's failure to explain the evidence he or she relied upon in assessing RFC constitutes a ground for a remand. *See Compo v. Commissioner of Soc. Sec.*, No. 6:05–CV–973, 2009 WL 2226496, *9 (N.D.N.Y. July 23, 2009) (citation omitted); *see also Hodge v. Astrue*, No. 07–CV–0162, 2009 WL 1940051, *10 (N.D.N.Y. July 7, 2009) (citation omitted).

To properly ascertain a claimant's RFC, an ALJ must assess the claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull. *See* 20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a. Nonexertional limitations or impairments, including impairments resulting in postural and manipulative limitations, must also be considered. *See* 20 C.F.R. §§ 404.1545(b), 404.1569(a); *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *See Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728

16

F.2d 582, 588 (2d Cir. 1998)). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the corresponding regulations. *See Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

Here, the ALJ provided detailed analysis of the medical evidence, describing evidence of Plaintiff's limitations as provided by each medical source and the requisite weight assigned thereto. *See* Tr. at 638-45. The ALJ concluded that

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except [Plaintiff] can occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs, and frequently handle and finger bilaterally. The [Plaintiff] can understand, remember and carry out simple work and adapt to routine workplace changes.

*See id*. at 638. In her initial papers, Plaintiff claimed that she was unable to perform sedentary work because her knee and back conditions make it difficult to stand or walk for extended periods and her mental impairments prevent her from being able to maintain attention, concentration, and a regular schedule. *See id*. at 915.

With respect to Plaintiff's physical abilities, the ALJ acknowledged that the record supports that Plaintiff has a variety of physical maladies and impairments. *See id*. at 639. However, the ALJ concluded that the record indicates that Plaintiff's impairments did not limit her to the extent alleged. *See id*. In 2009, Plaintiff was diagnosed with fibromyalgia and myofascial pain based on reports of muscle and joint pain. *See id*. at 481. Despite some tenderness, Plaintiff exhibited good range of motion in all of her joints and normal strength. *See id*. Plaintiff began treatment and reported improvement of her symptoms. *See id*. at 276-344. Over the course of the period at issue Plaintiff was treated for mild degenerative changes in her

lumbar spine and small disc herniations. *See id*. at 299, 601. However, following treatment, Plaintiff reported improvement. *See id*. at 605. Plaintiff also experienced pain in her right knee leading up to a surgery in April 2010. *See id*. at 614. Following the surgery, Plaintiff recovered well and expressed minimal complaints of pain. *See id*.

It is clear that the ALJ considered detailed information as to Plaintiff's physical abilities. The ALJ considered the record evidence and the available medical opinions in determining Plaintiff's ability to perform the physical demands of work activity. *See id*. at 639-45; 20 C.F.R. § 404.1545(b). Additionally, a review of the record makes clear that the ALJ's decision is supported by substantial evidence.

The ALJ also considered evidence of Plaintiff's mental abilities, noting that Plaintiff alleged limitations related to her anxiety, depression, and obsessive-compulsive behavior. *See* Tr. at 640. Upon an intial psychological examination in January 2009, Plaintiff exhibited depressed mood and affect, but presented as cooperative and appropriately groomed and dressed. *See id*. at 599. Plaintiff also demonstrated good concentration, abstraction, insight, impulse control, and recall. *See id*. In October 2009, Plaintiff presented similarly at another psychological evaluation. *See id*. at 406-07. In 2010, Plaintiff reported reduced anxiety and greater stability of symptoms while on medication. *See id*. at 460-61. Finally, Plaintiff indicated that she was able to manage her own self-care, cook, clean, shop, drive, take care of her young son, and manage her own money. *See id*. at 407-08. As the ALJ correctly notes, the record contains more than a mere scintilla of evidence that Plaintiff is able to understand, remember, engage in simple work, and adapt to routine workplace changes. *See id*. at 640-41; 20 C.F.R. § 404.1545(c). Thus, the ALJ's conclusion regarding Plaintiff's mental abilities is supported by substantial evidence.

Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 22) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 23, 2019
Albany, New York

Mae A. D'Agostino
U.S. District Judge